## DOAN *v.* THE STATE.

AIDING AND ABETTING.—PRINCIPAL.—Where one is present at the commission of a felony, though he gives no active assistance, but only remains near for the purpose of watching and giving aid if necessary, he is properly charged as a principal.

INDICTMENT.—BURGLARY.—An indictment for burglary charged that the defendants broke, &c., into the storehouse of A B and C D, partners, doing business under the firm name of B and D, with the felonious intent to steal, &c., the goods of said A B and C D.

*Held,* that proof that the storehouse and goods belonged to the firm of B and D, without any proof of the christian names of the partners, was not sufficient to sustain the indictment.

INSTRUCTION.—On the trial the court instructed the jury that "where all the circumstances proved raise a strong presumption of the guilt of the accused, his failure to offer any explanation, when it is in his power to do so, tends to confirm the presumption of his guilt."

*Held,* that the instruction was erroneous.

APPEAL from the *Johnson* Circuit Court.

RAY, J.—The indictment in this case charged the appellant with unlawfully, and burglariously, &c., breaking and entering, in the night time, into the storehouse of *Samuel P. Frost* and *John C. Valentine,* partners, doing business under

the firm name of *Frost & Valentine,* with the felonious intent to steal, take and carry away the personal goods, &c., of said *Samuel P. Frost* and *John C. Valentine.*

The proof on the trial was, that while two other persons broke and entered the storehouse, the appellant did not break or enter, but acting in concert with the other two, remained outside watching, and ready and near enough to render them assistance, in case it might be required.

It is objected that the appellant was not charged as an aider and abetter, but as a principal. This was correct. At common law it was not required, in order to constitute one a principal in an offense, that the party charged should have been an eye witness of the transaction, or within hearing; it was sufficient that he had knowledge of the crime, and watched near enough and ready to assist those actually engaged, if required. That made a presence aiding and abetting, and constituted him a principal in the second degree, and he could be charged and convicted as a principal. Indeed, it was ruled in the case of *Rex* v. *Winifred et al.,* 1 Leach 515, that where a person was indicted as an accessory before the fact, he could not be convicted of that charge upon evidence proving him to have been present aiding and abetting; the distinction between a principal in the second degree and an accessory before the fact being the presence of the former for the purpose of aiding, if required, those who actually commit the offense. That presence renders him who would otherwise have been but an accessory before the fact, a principal in the second degree.

" The law, however," says *Archbold,* "recognizes no difference between the offense of the principal in the first degree, and of the principal in the second; both are equally guilty, and so immaterial is the distinction considered in practice, that if a man be indicted as principal in the first degree, proof that he was present aiding and abetting another in committing the offense, although his was not the hand which actually did it, will support the indictment, and, on the other hand, if he be indicted as principal in the second

degree, proof that he was not only present but committed the offense with his own hand will support the indictment. So where an offense is punishable by a statute which makes no mention of principal in the second degree, such principals are within the meaning of the statute as much as the parties who actually committed the offense." 1 Arch. Crim. Prac. and Pl., p. 13.

Our statute, indeed, goes beyond the common law, and authorizes, although it does not perhaps require, the indictment as a principal of one who simply counsels, aids or abets in the commission of any offense, and who may therefore have been but an accessory before the fact, and not present at the time of its commission. 2 G. & H., § 66, p. 405. We think the instructions given by the court upon this point placed the case properly before the jury.

The court instructed the jury that "if the property was shown to be that of *Frost & Valentine*, it is as good for the purposes of this case as if their given names had been proved—their given names being wholly unimportant." The rule is that the owner or owners of the property entered, or goods stolen, must be named, and their names "precisely proved as laid." 3 Greenleaf Ev. § 22. Our statute so far modifies the rule, as to require the indictment to state only the name of any one of several joint owners. But where the names of all the owners are stated, the proof, in our opinion, should sustain the allegation, the ownership being a material averment. If it be admitted that the case of *The People* v. *Ah Sing*, 19 Cal., R. 598, was correctly ruled, it does not avoid the question we are considering. It was there held, "that an indictment for larceny stating the ownership to be in a firm, giving the firm name only, is sufficient." But in the case under consideration, the indictment not only states the firm or partnership name of the persons who it is alleged own the goods, but identifies the firm, by designating the particular individuals who composed it. They can only be thus designated in the indictment by their names, their christian and sur-names, and

the proof, it seems to us, should not be less explicit. In the case of *Rex* v. *Robinson*, Holt's C. N. P., 595, the indictment was for plundering the wreck of a brig. In one count the property of the brig was laid in persons therein named, in the other it was laid in persons unknown. The witness could not recollect the christian names of some of the owners laid in the first count, and RICHARDS, C. B. ruling that as to the second count the names could not be said to be unknown, as they might have easily been ascertained, an acquittal was directed.

The jury were also instructed that " when all the circumstances proved raise a strong presumption of the guilt of the accused, his failure to offer any explanation, where it is in his power to do so, tends to confirm the presumption of his guilt."

This instruction was clearly erroneous. If the jury knew that it was in the power of the accused to offer an explanation of circumstances which, unexplained, raised a strong presumption of his guilt, that knowledge of his ability to explain these circumstances destroyed the presumption which would otherwise be indulged against the accused. The defendant was not to be convicted of burglary because he failed to satisfy the curiosity of the jury, by giving an explanation of circumstances which created no presumption of guilt against him, because the jury knew that he was able to explain them and thereby destroy any presumption which might have arisen, had the jury been uninformed of his ability to make such explanation. It was probably intended to inform the jury, that if circumstances which had been introduced in proof created a strong presumption of guilt against the defendant, and those circumstances, if untrue, the jury knew the defendant could disprove, or if true and yet capable of an explanation consistent with his innocence, he could give such explanation, in such a case his failure to make such proof tended to confirm the evidence of the existence of the circumstances; or that his failure to explain added force to the inference drawn from the

circumstances proved. Whether, however, the instruction thus modified would have been correct, we need not determine, as the instruction given was not to this effect.

The judgment is reversed, and the cause remanded for a new trial.

*G. M. Overstreet* and *A. B. Hunter*, for appellant.

*D. E. Williamson*, Attorney General, for the State.